## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                              :
KATHLEEN D.                   :    Civ. No. 3:20CV01374(SALM)
                              :
v.                            :
                              :
COMMISSIONER OF THE SOCIAL    :
SECURITY ADMINISTRATION[1]    :    February 7, 2022
                              :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Kathleen D. ("plaintiff") brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB"). Plaintiff moves to reverse the Commissioner's decision or, in the alternative, to

---

[1] Plaintiff has named Andrew Saul, a former Commissioner of the Social Security Administration, as defendant. Claims seeking judicial review of a final agency decision are filed against the Commissioner in his or her official capacity; as a result, the particular individual currently serving as Commissioner is of no import. See Fed. R. Civ. P. 17(d) ("A public officer who ... is sued in an official capacity may be designated by official title rather than by name[.]"); 42 U.S.C. §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). Accordingly, the Clerk of the Court is directed to update the docket to name the Commissioner of the Social Security Administration as the defendant. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

remand for further administrative proceedings. [Doc. #14].
Defendant moves for an order affirming the decision of the
Commissioner. [Doc. #18].

For the reasons set forth below, plaintiff's Motion to
Reverse Decision of the Commissioner and/or to Remand to the
Commissioner **[Doc. #14]** is **DENIED,** and defendant's Motion for
Order Affirming the Decision of the Commissioner **[Doc. #18]** is
**GRANTED.**

I.   **PROCEDURAL HISTORY**[2]

Plaintiff filed an initial application for DIB on August 7,
2017, alleging disability beginning December 23, 2016. See
Certified Transcript of the Administrative Record, Doc. #12,
compiled on February 16, 2021, (hereinafter "Tr.") at 133-35.
Plaintiff's application was denied initially on October 18,
2017,[3] see Tr. 133-46, and upon reconsideration on February 21,
2018. See Tr. 147-62.

On December 18, 2018, plaintiff, represented by Attorney
Dennis Stark, appeared and testified at a hearing before

---

[2] In compliance with the Standing Scheduling Order, plaintiff
filed a "Statement of Material Facts," Doc. #14-2, to which
defendant filed a responsive Statement of Facts. See Doc. #18-2.

[3] The ALJ's decision reflects an initial denial date of October
19, 2017, and a denial upon reconsideration on February 22,
2018. See Tr. 42. However, the record reflects an initial denial
date of October 18, 2017, see Tr. 133, and denial upon
reconsideration on February 21, 2018. See Tr. 147. This
discrepancy does not affect the Court's analysis.

Administrative Law Judge ("ALJ") John Aletta. See generally Tr. 74-125. Vocational Expert ("VE") Dennis King appeared and testified by telephone at the hearing. See Tr. 75-77, 109-24. On March 8, 2019, the ALJ issued an unfavorable decision. See Tr. 39-60. On July 24, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby making the ALJ's March 8, 2019, decision the final decision of the Commissioner. See Tr. 3-7. This case is now ripe for review under 42 U.S.C. §405(g).

## II.   STANDARD OF REVIEW

The review of a Social Security disability determination involves two levels of inquiry. "First, the Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard. Next, the Court examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999) (citations omitted). Substantial evidence is evidence that "'a reasonable mind might accept as adequate to support a conclusion[;]'" it is "'more than a mere scintilla.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)). The reviewing court's "responsibility is always to ensure that a claim has been fairly evaluated[.]" Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

"The Court does not reach the second stage of review --
evaluating whether substantial evidence supports the ALJ's
conclusion -- if the Court determines that the ALJ failed to
apply the law correctly." Poole v. Saul, 462 F. Supp. 3d 137,
146 (D. Conn. 2020).

> Where there is a reasonable basis for doubt whether the
> ALJ applied correct legal principles, application of the
> substantial evidence standard to uphold a finding of no
> disability creates an unacceptable risk that a claimant
> will be deprived of the right to have her disability
> determination made according to the correct legal
> principles.

Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set
forth with sufficient specificity" by the ALJ to enable a
reviewing court "to decide whether the determination is
supported by substantial evidence." Ferraris v. Heckler, 728
F.2d 582, 587 (2d Cir. 1984). The "ALJ is free to accept or
reject" the testimony of any witness, but "[a] finding that the
witness is not credible must nevertheless be set forth with
sufficient specificity to permit intelligible plenary review of
the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255,
260-61 (2d Cir. 1988). "Moreover, when a finding is potentially
dispositive on the issue of disability, there must be enough
discussion to enable a reviewing court to determine whether
substantial evidence exists to support that finding." Leslie H.
L. v. Comm'r of Soc. Sec. Admin., No. 3:21CV00150(SALM), 2021 WL

5937649, at *2 (D. Conn. Dec. 16, 2021) (citation and quotation marks omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)).

## III. **SSA LEGAL STANDARD**

Under the Social Security Act, every individual meeting certain requirements who is under a disability is entitled to disability insurance benefits. See 42 U.S.C. §423(a)(1).

For the Social Security Administration ("SSA") to consider a claimant disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work

experience, engage in any other kind of substantial gainful work
which exists in the national economy[.]" 42 U.S.C.
§423(d)(2)(A); see also 20 C.F.R. §404.1520(c) (requiring that
an "impairment or combination of impairments ... significantly
limit[] ... physical or mental ability to do basic work
activities[]" to be considered "severe").

There is a familiar five-step analysis used to determine
whether a person is disabled. See 20 C.F.R. §404.1520(a)(4). In
the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If
> [s]he is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits [her] physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider [her]
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per
curiam). If and only if the claimant does not have a listed
impairment, the Commissioner engages in the fourth and fifth
steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, [s]he has the residual functional
> capacity to perform [her] past work. Finally, if the
> claimant is unable to perform [her] past work, the

6

> Secretary then determines whether there is other work
> which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the Secretary
> must prove the final one.

Id.

> Through the fourth step, the claimant carries the
> burdens of production and persuasion, but if the
> analysis proceeds to the fifth step, there is a limited
> shift in the burden of proof and the Commissioner is
> obligated to demonstrate that jobs exist in the national
> or local economies that the claimant can perform given
> [her] residual functional capacity.

Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Hum.

Servs., 360 F. App'x 240, 243 (2d Cir. 2010); see also Poupore

v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The

residual functional capacity ("RFC") is "the most" a person is

still capable of doing despite limitations resulting from her or

his physical and mental impairments. 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1)

the objective medical facts; (2) diagnoses or medical opinions

based on such facts; (3) subjective evidence of pain or

disability testified to by the claimant or others; and (4) the

claimant's educational background, age, and work experience."

Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).

"[E]ligibility for benefits is to be determined in light of the

fact that the Social Security Act is a remedial statute to be

broadly construed and liberally applied." Id. (citation and

quotation marks omitted).

7

## IV. <u>THE ALJ'S DECISION</u>

Following the above-described evaluation process, the ALJ concluded that plaintiff had "not been under a disability within the meaning of the Social Security Act from December 23, 2016, through" March 8, 2019.[4] Tr. 42.

At step one, after a discussion of plaintiff's part-time work, the ALJ found that plaintiff had "not engaged in substantial gainful activity since the application date." Tr. 45. Specifically, the ALJ found that, "[c]onsidering the extent and nature of the accommodations provided to" plaintiff, "her work was subsidized and ... the actual value of work performed by the [plaintiff] was not commensurate with substantial gainful activity." <u>Id.</u>

At step two, the ALJ found that plaintiff suffered from the severe impairments of "breast cancer with chemotherapy induced neuropathy and right carpal tunnel syndrome[.]" Tr. 46. The ALJ

---

[4] A claimant seeking DIB for a period of disability must, in addition to presenting evidence of her disability, also satisfy the "insured status" requirements of the Act. 42 U.S.C. §423(c). To be entitled to benefits, plaintiff must demonstrate that she was disabled prior to the expiration of her insured status, <u>i.e.</u>, as of her date last insured. <u>See</u> <u>Pratts v. Chater</u>, 94 F.3d 34, 35-36 (2d Cir. 1996); <u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000); <u>see</u> <u>also</u> 20 C.F.R. §§404.130, 404.131, 404.315(a), 404.320(b). Plaintiff's date last insured is December 31, 2022. <u>See</u> Tr. 238. Accordingly, and as acknowledged by the ALJ, the relevant time period under consideration is the amended alleged onset date of December 23, 2016, through March 8, 2019, the date of the ALJ's decision. <u>See</u> Tr. 39, 42.

found that plaintiff suffered from the following medically determinable impairments: "asthma, hypothyroidism and Graves disease." Id. The ALJ found that none of these non-severe impairments "represent[ed], either singly or in combination with everything else, more than a minimal limitation in the ability to perform basic work activities." Id.

At step three, the ALJ determined that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Id. The ALJ specifically considered "listing 13.10[]" in evaluating plaintiff's breast cancer and "listing 11.14[]" in evaluating her chemotherapy induced neuropathy and carpal tunnel syndrome. Tr. 47.

Before moving on to step four, the ALJ found that plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: The [plaintiff] can occasionally climb ramps and stairs and can never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She cannot work at unprotected heights. She must avoid concentrated exposure to extreme cold, and must avoid concentrated exposure to operating machinery having moving mechanical parts, which are exposed. She must use light weight close fitting cloth gloves typically used in gardening to handle, finger and feel objects.

Id.

At step four, the ALJ concluded that plaintiff was "capable

of performing past relevant work as an underwriter." Tr. 52. The ALJ further found: "Although the [plaintiff] is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform." Tr. 53. Thus, the ALJ proceeded to step five to make "alternative findings[.]" Id.

At step five, considering plaintiff's "age, education, work experience, and residual functional capacity[,]" the ALJ found that plaintiff could perform the additional jobs of survey worker; information clerk; and fund raiser. Tr. 54.

## V.  DISCUSSION

Plaintiff asserts that the ALJ erred by: (1) failing to base the RFC on substantial evidence; (2) impermissibly cherry-picking medical evidence; (3) improperly finding the medical opinion of plaintiff's treating physician, Dr. DiGiovanna, unpersuasive; and (4) failing to develop the record after finding Dr. DiGiovanna's opinion unpersuasive. See Doc. #14-1 at 2-3. Plaintiff challenges only the determinations of the ALJ relating to her physical and exertional limitations, rather than any psychological, mental health, or nonexertional limitations.

### A. Dr. DiGiovanna's Opinion

Plaintiff asserts that the ALJ erred by finding that the opinion of plaintiff's treating oncologist, Dr. DiGiovanna, was unpersuasive, see Doc. #14-1 at 13-17, and by failing to develop

10

the record further after doing so. See id. at 18. Defendant responds that the ALJ properly evaluated the persuasiveness of Dr. DiGiovanna's opinion, consistent with 20 C.F.R. §404.1520c, see Doc. #18-1 at 6-7, and that the ALJ was under no duty to develop the record because the record contained substantial evidence. See id. at 11-12.

### 1. Evaluation of Dr. DiGiovanna's Opinion

#### i. *Applicable Law*

The SSA has enacted new regulations regarding the consideration of medical opinions for claims filed on or after March 27, 2017. See 20 C.F.R. §404.1520c. Because plaintiff filed her application on August 7, 2017, see Tr. 133, the new regulations apply to plaintiff's claim.

"Previously, the SSA followed the treating physician rule, which required the agency to give controlling weight to a treating source's opinion, so long as it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record." Jacqueline L. v. Comm'r of Soc. Sec., 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citation and quotation marks omitted). Under the new regulations, "no particular deference or special weight is given to the opinion of a treating physician." Quiles v. Saul, No. 19CV11181(KNF), 2021 WL 848197, at *9 (S.D.N.Y. Mar. 5, 2021).

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning weight to a medical opinion, the ALJ must still articulate how he or she considered the medical opinions and how persuasive he or she finds all of the medical opinions." Jacqueline L., 515 F. Supp. 3d at 8 (citation and quotation marks omitted); see also 20 C.F.R. §404.1520c(a). For applications filed after March 27, 2017, the ALJ evaluates medical opinions using the factors outlined in 20 C.F.R. §404.1520c(c)(1)-(5). See 20 C.F.R. §404.1520c(a). "The factors of supportability ... and consistency ... are the most important factors" the ALJ "consider[s] when ... determin[ing] how persuasive [to] find a medical source's medical opinions[.]" 20 C.F.R. §404.1520c(b)(2).

When "articulat[ing] [the] consideration of medical opinions" the ALJ "will articulate ... how persuasive [he] find[s] all of the medical opinions[.]" 20 C.F.R. §404.1520c(b). In doing so, the ALJ "will explain how [he] considered the supportability and consistency factors for a medical source's medical opinions[.]" 20 C.F.R. §404.1520c(b)(2). The ALJ will also consider the medical source's relationship with the claimant; the medical source's specialization; and "other factors that tend to support or contradict a medical opinion[.]" 20 C.F.R. §§404.1520c(c)(3)-(5). However, the ALJ is "not

12

required to[] explain how" he evaluated these additional factors. 20 C.F.R. §404.1520c(b)(2).

The new regulations acknowledge that "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. §404.1520c(c)(3)(v). Thus,

> [e]ven though ALJs are no longer directed to afford controlling weight to treating source opinions -- no matter how well supported and consistent with the record they may be -- the regulations still recognize the "foundational nature" of the observations of treating sources, and "consistency with those observations is a factor in determining the value of any [treating source's] opinion." Barrett v. Berryhill, 906 F.3d 340, 343 (5th Cir. 2018).

Shawn H. v. Comm'r of Soc. Sec., No. 2:19CV00113(JMC), 2020 WL 3969879, at *6 (D. Vt. July 14, 2020); accord Jacqueline L., 515 F. Supp. 3d at 8.

ii. *Analysis*

Contrary to plaintiff's argument, the ALJ did address the regulatory factors, as required, in explaining his assessment of Dr. DiGiovanna's opinion. The ALJ found DiGiovanna's opinion "not persuasive as it is not well supported and is not consistent with the medical evidence." Tr. 51. He then went on to explain the basis for his findings as to both supportability and consistency, as called for by the regulations. As to supportability, the ALJ stated:

> Regarding  supportability,  the  opinion  does  not

13

> adequately explain the limitations assessed and instead
> relies on the claimant's subjective complaints rather
> than objective evidence. Dr. DiGiovanna noted fatigue,
> body aches, nausea, vomiting, possible diarrhea and pain
> from neuropathy as reasons for the limitations. However,
> he does not cite to objective testing that confirms the
> presence of any of these symptoms.

Tr. 51. This explanation is both sufficient, and supported by substantial evidence.

With respect to supportability, the regulations state: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. §404.1520c(c)(1) (emphasis added). "[T]he strength of a medical opinion (supportability) increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." Patricia B. v. Saul, No. 2:20CV00053(WKS), 2021 WL 6211418, at *5 (D. Vt. July 14, 2021). Thus, the ALJ correctly focused on whether Dr. DiGiovanna supported his opinion with relevant, objective medical evidence.

Plaintiff argues, in a conclusory fashion, that the ALJ "lacks an understanding of what the opinion is predicated upon," and that the opinion is "predicated, at least in part, upon the well-known side effects of Taxol." Doc. #14-1 at 17.

"Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory

14

diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. §404.1529(c)(2). The "well-known side effects of Taxol[]" are not "objective medical evidence" as defined by the regulations. Simply because the side effects of a drug are well-known, it is not guaranteed that any particular patient will experience those side effects. The ALJ correctly focused on the lack of "objective medical evidence" <u>specific to this plaintiff</u> and the lack of adequate "supporting explanations" offered by Dr. DiGiovanna in his opinion to make his determination. 20 C.F.R. §404.1520c(c)(1).

With respect to consistency, the regulations provide: "The more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. §404.1520c(c)(2). As to this factor, the ALJ stated:

> Turning to consistency, the opinion is inconsistent with the evidence of normal motor tone, normal fine finger movements, normal sensation with light touch, pinprick and temperature, normal proprioception and normal finger to nose movements. They are also inconsistent with the record showing a normal gait with intact sensation over the entirely of feet and toes. They are further inconsistent with the record demonstrating normal motor testing, normal range of motion, normal strength and normal vibratory sense.

Tr. 51 (citations to the record omitted). Again, this explanation is both sufficient, and supported by substantial

evidence. The ALJ cited numerous specific records as "evidence from other medical sources and nonmedical sources" that were inconsistent with the opinion. 20 C.F.R. §404.1520c(c)(2).

In what appears to be a "consistency" argument, plaintiff cites numerous records that she contends show that Dr. DiGiovanna's opinion was consistent with the record. See Doc. #14-1 at 13-14 n.7. "To the extent there is evidence supporting plaintiff's position, that is not the question to be decided. Rather, the question is whether substantial evidence supports the ALJ's decision." Gentile v. Saul, No. 3:19CV01479(SALM), 2020 WL 5757656, at *12 (D. Conn. Sept. 28, 2020). Here, substantial evidence supported the ALJ's finding that Dr. DiGiovanna's opinion was not consistent with the record as a whole.

Dr. DiGiovanna's opinion, dated May 19, 2017, restricts plaintiff to "[l]imited heavy lifting, limited activity [due to] fatigue, body aches, nausea, vomiting, possible diarrhea, [and] pain from neuropathy in hands/feet[.]" Tr. 442. The ALJ found the opinion unpersuasive because it was "inconsistent with the evidence" of plaintiff's condition. Tr. 51. This conclusion is supported by the record. Physical examination findings from an office visit on May 9, 2017, with Dr. DiGiovanna -- just twelve days before he wrote his opinion -- were normal. See Tr. 445, 449. Dr. DiGiovanna reported no vomiting, no diarrhea, improving

16

energy levels, and some neuropathic pain that was "not interfering [with] her daily activities." Tr. 447.

Thee record includes other objective medical evidence dated after plaintiff completed her chemotherapy that is inconsistent with Dr. DiGiovanna's opinion. For example, on August 14, 2018, some hyper-paresthesia was noted, but sensation was "[i]ntact to light touch, pinprick and temperature[;]" "[v]ibration sensation [was] present at the great toes[;]" proprioception was normal; reflex testing was normal; and no abnormal motor movements were detected, including "[f]ine finger movements." Tr. 1075-76. Further, on October 5, 2018, an electromyography conducted to "evaluate for peripheral neuropathy" revealed normal results, showing "no electrodiagnostic evidence for peripheral neuropathy affecting the large diameter nerve fibers." Tr. 1155.

The Court finds that the ALJ adequately explained the basis for his assessment of Dr. DiGiovanna's opinion, including the factors of supportability and consistency, and that substantial evidence supports the ALJ's conclusion that the opinion was not persuasive. There is no error on this basis.

2. Duty to Develop the Record

1. *Applicable Law*

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v.

Chater, 77 F.3d 41, 47 (2d Cir. 1996); see also Swiantek v.
Comm'r of Soc. Sec., 588 F. App'x 82, 84 (2d Cir. 2015).
However, "[t]he ALJ is not required to develop the record any
further when the evidence already presented is 'adequate for
[the ALJ] to make a determination as to disability.'" Janes v.
Berryhill, 710 F. App'x 33, 34 (2d Cir. 2018) (quoting Perez, 77
F.3d at 48); see also Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d
Cir. 1999) ("[W]here there are no obvious gaps in the
administrative record, and where the ALJ already possesses a
complete medical history, the ALJ is under no obligation to seek
additional information in advance of rejecting a benefits
claim." (citation and quotation marks omitted)). Accordingly,
the duty to develop the administrative record is triggered "only
if the evidence before [the ALJ] is inadequate to determine
whether the plaintiff is disabled." Walsh v. Colvin, No.
3:13CV00687(JAM), 2016 WL 1626817, at *2 (D. Conn. Apr. 25,
2016) (citation and quotation marks omitted).

"When an unsuccessful claimant files a civil action on the
ground of inadequate development of the record, the issue is
whether the missing evidence is significant. The plaintiff in
the civil action must show that he was harmed by the alleged
inadequacy of the record[.]" Santiago v. Astrue, No.
3:10CV00937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27,
2011) (citation omitted); see also Lena v. Astrue, No.

3:10CV00893(SRU), 2012 WL 171305, at *9 (D. Conn. Jan. 20, 2012)

("To demonstrate prejudice [plaintiff] must show that the

additional medical reports would undermine the ALJ's decision."

(citation and quotation marks omitted)). Accordingly, plaintiff

bears the burden of showing such harmful error. See Santiago,

2011 WL 4460206, at *2.

2. *Analysis*

Plaintiff argues, with minimal discussion, that the ALJ

failed to develop the record. See Doc. #14-1 at 18. The entirety

of plaintiff's argument is:

> It is well established that the ALJ has an ongoing duty
> to develop the record. See, e.g. Moreau v. Berryhill,
> No. 3:17-cv-00396 (JCH), 2018 WL 1316197 (D. Conn. Mar.
> 14, 2018)
>
> If the ALJ found the opinion of Dr Giovanna to be
> contrary to the record, unsupported and not persuasive.
> Dr DiGiovanna is an oncologist, specializing in cancer
> treatment, and presumably has a thorough understanding
> of how cancer, and the treatment thereof, limits an
> individual. Instead of finding his opinion unpersuasive,
> the ALJ could have and should have sought clarification
> from the plaintiff's oncologist.

Id. (sic). Notably, plaintiff does not contend that there is any

significant missing evidence that would undermine the ALJ's

decision. Plaintiff seems to argue that the mere fact that the

ALJ found the opinion unpersuasive meant that he was required to

contact Dr. DiGiovanna for clarification. That is not the law.

The regulations explicitly allow an ALJ to find a medical

opinion unpersuasive. See 20 C.F.R. §404.1520c(b) (The ALJ "will

19

articulate in [his] determination or decision how persuasive [he found] all of the medical opinions[.]"); see also Leslie H. L., 2021 WL 5937649, at *5 ("Under the regulations governing claims filed on or after March 27, 2017, the ALJ determines 'how persuasive' a medical opinion is. ... A finding that a medical opinion is 'unpersuasive' rather than 'somewhat persuasive' or even 'minimally persuasive' indicates that the opinion was given no effect by the ALJ.").

If an ALJ finds that the evidence in the "record is insufficient or inconsistent[,]" the ALJ will "consider the relevant evidence and see if [he] can determine whether [plaintiff is] disabled based on the evidence [he has]." 20 C.F.R. §404.1520b(b)(1). An ALJ need only take additional action to develop the record if there is "insufficient evidence to determine whether [plaintiff is] disabled[.]" 20 C.F.R. §404.1520b(b)(2). Even then, however, the regulations contemplate multiple ways in which an ALJ may obtain additional evidence, including requesting "additional existing evidence;" seeking a consultative examination; or asking plaintiff for additional information. 20 C.F.R. §§404.1520b(b)(2)(ii-iv). The ALJ may, but is not required to, "recontact [a] medical source." 20 C.F.R. §404.1520b(b)(2)(i). In sum, the regulations expressly provide that an ALJ is not required to contact the treating source simply because he finds that source's opinion

20

unpersuasive.

Plaintiff has failed to present any argument that the record without Dr. DiGiovanna's opinion is inadequate or that any additional information obtained from Dr. DiGiovanna would have been significant. Accordingly, plaintiff has not met her burden of showing that the ALJ was required to further develop the record after finding Dr. DiGiovanna's opinion unpersuasive.

**B. RFC Determination**

Plaintiff asserts that the ALJ impermissibly "cherry-picked" evidence by "ignor[ing] evidence supporting significant manipulative limitations to the upper extremities and utilized only evidence which was contrary thereto[,]" Doc. #14-1 at 8-9 (footnote omitted), and that the RFC therefore is not supported by substantial evidence. See id. at 6-7. Specifically, plaintiff claims that the ALJ erred by failing to include in the RFC any manipulative limitations, other than the requirement that plaintiff be permitted to "use light weight close fitting cloth gloves typically used in gardening to handle, finger and feel objects." Tr. 47; see Doc. #14-1 at 6-7. Defendant responds that the RFC is supported by substantial evidence and that the ALJ did not cherry-pick evidence, stating that the plaintiff "simply puts [her] own spin on the evidence[.]" Doc. #18-1 at 7.

1. Applicable Law

A plaintiff's RFC is "the most [she] can still do despite

21

[her] limitations." 20 C.F.R. §404.1545(a)(1). The RFC is assessed "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. §§404.1545(a)(1), (3). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing 20 C.F.R. §404.1545(a)).

"'Cherry picking' ... refers to an ALJ picking and choosing within a single medical opinion, crediting the portions that support the ALJ's findings and ignoring the portions that do not. Such a practice 'suggests a serious misreading of evidence, or failure to comply with the requirement that all evidence be taken into account, or both.'" Katrina M. v. Comm'r of Soc. Sec., No. 19CV06777(WMS), 2021 WL 508090, at *4 (W.D.N.Y. Feb. 11, 2021) (quoting Dowling v. Comm'r of Soc. Sec., No. 5:19CV01558(DJS), 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015)). "However, it is also 'not require[d] that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" Thomas v. Berryhill, 337 F. Supp. 3d 235, 244 (W.D.N.Y. 2018)

(quoting <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1040 (2d Cir. 1983)). An ALJ's decision to discuss only certain pieces of evidence relevant to the disability determination does <u>not</u> mean the ALJ engaged in impermissible "cherry-picking."

     2. <u>Analysis</u>

Plaintiff asserts that the RFC should have included additional manipulative limitations because of plaintiff's neuropathic pain and carpal tunnel syndrome. <u>See</u> Doc #14-1 at 6-7.

With respect to plaintiff's neuropathy, the ALJ stated: "The findings of normal gait, an ability to walk on heels and toes, normal motor tone, normal motor strength and no muscle atrophy contributed to the finding that the claimant retained the ability to perform light work." Tr. 50. With respect to plaintiff's carpal tunnel syndrome, the ALJ stated: "The record contained no treatment specific to the claimant's carpal tunnel syndrome. The findings of normal strength, normal range of motion, generally normal sensation testing, normal EMG testing and normal range of motion contributed to the finding that the claimant retained the ability to perform light work." <u>Id.</u> (citation omitted). Substantial evidence supports these conclusions.

Plaintiff's neuropathic pain is well-documented throughout the record. However, the record also contains substantial

23

evidence that plaintiff is able to perform light work without any manipulative limitations other than the ability to wear gloves. Notably, both State Agency medical consultants, Dr. Jeffrey Wheeler and Dr. Eugene Noland, found that plaintiff was capable of performing light work without any manipulative limitations.[5] See Tr. 144, 159. Again, the question is not whether substantial evidence supports plaintiff's position, but whether substantial evidence supports the ALJ's conclusion. See Gentile, 2020 WL 5757656, at *12.

The ALJ specifically acknowledged and considered plaintiff's complaints of neuropathic pain in her fingers and carpal tunnel syndrome; he did not "cherry-pick" evidence in the record, he simply weighed it. See Tr. 47-52. The medical evidence of record indicates that plaintiff began experiencing peripheral neuropathy as a side effect of Taxol, a chemotherapy drug. See, e.g., Tr. 1031. However, multiple treatment notes throughout the record indicate that, despite the neuropathic pain, plaintiff was still able to perform her daily activities and her work. See, e.g., Tr. 447 (May 9, 2017: "[S]he has

_____

[5] The ALJ found the opinions of both State Agency medical consultants to be persuasive. See Tr. 50. Plaintiff does not challenge this finding. Both State Agency medical consultants' found that plaintiff could perform work with fewer restrictions than the ALJ incorporated into the RFC. See Tr. 144, 159. Absent any challenge to the persuasiveness of these less restrictive opinions, the Court is hard-pressed to find the RFC determined by the ALJ unreasonable.

24

noticed a more constant numbness and tingling in the tips of her
fingers and her toes. This is slightly worse than last visit,
but is not interfering with her daily activities."); Tr. 537
(June 13, 2017: "She has not dropped any objects and does not
report difficulty with fine motor movements."); Tr. 541 (May 30,
2017: "Continues to have residual tingling but is no longer
having as much difficulty with functioning (can now do smaller
buttons which were difficult) with difficulty now mostly due to
fingernail pain, however her fingernails are also less
painful."); Tr. 544 (May 26, 2017: "[N]europathy has improved
and is feeling better 'overall.' ... Fingers and toes numb and
tingly -- not painful."); Tr. 560 (April 25, 2017: "Since her
last chemotherapy, she noticed more constant numbness and
tingling in the tip of her fingers and her toes. She denies any
burning sensation or pain."); Tr. 571 (March 28, 2017: "No pain,
tingling/numbness of her extremities."); Tr. 964 (October 5,
2017: "[S]lightly decreased pain, and no difficulty using a fork
or holding a coffee cup, in only the last 3 visits."); Tr. 993
(December 1, 2017: "Both hands and feet are affected similarly
... has no sensory level, facial numbness, motor weakness[.]");
Tr. 1036 (January 30, 2018: improvement of neuropathy with use
of Gralise 3000mg); Tr. 1068 (July 24, 2018: "[N]europathy had
improved for the final cycle."); Tr. 1095 (October 23, 2018:
indicating that plaintiff was making progress with occupational

therapy).

The VE testified that typing "is an essential function of [plaintiff's] job[]" as an underwriter. Tr. 117. In response to a question from the ALJ regarding the impact of gloves on plaintiff's ability to use "the hands and fingers[,]" the VE stated: "[I]f these gloves did not interfere with her ability to type to a degree that would put her more than 10 percent off task, then she certainly could continue doing the underwriter, consultant, and the three hypothetical jobs I provided[.]" Tr. 117-18.

Although plaintiff testified that she can't type "with or without gloves[,]" Tr. 124, treatment notes indicate only that plaintiff had difficulties typing prior to receiving treatment, or without using a barrier such as gloves. One note from July 24, 2018, indicated that plaintiff was "unable to type on keyboard[,]" but that same note also indicated that she had "not had any treatment for [carpal tunnel syndrome] yet." Tr. 1066. Less than a month later, a treatment note dated August 14, 2018, indicated typing was "more difficult," but focused on use of her bare hands rather than her hands with gloves. Tr. 1071. By October 5, 2018, plaintiff's electromyography showed no "evidence for a peripheral neuropathy affecting the large diameter nerve fibers." Tr. 1155. The record reflects that plaintiff's ability to use her fingers for typing-like

movements, such as typing on a touchscreen phone, improved with the use of gloves or other skin barriers. See Tr. 1392.

Finally, multiple treatment notes from plaintiff's occupational therapy visits indicate that gloves, or other skin barriers, assisted plaintiff with motor movements. On September 27, 2018, a note stated: "K-tape application to fingertips was effective to allow light tapping and pinch tasks, eased use of touchscreen phone." Id. On October 2, 2018, the notes indicate that tape and gloves were helpful "for decreasing pain with prehension." Tr 1403-04. This note was repeated on October 9, 2018. See Tr. 1411. An October 29, 2018, treatment note indicates that "[p]rehension improved with barrier on skin of fingertips[,]" and plaintiff was issued "k-tape covers for fingertips" and was also considering a spray barrier. Tr. 1433.

"[W]here substantial evidence also supports the ALJ's determination, that determination must be affirmed." Rivera v. Berryhill, No. 3:18CV00143(AWT), 2019 WL 1292490, at *8 (D. Conn. Mar. 21, 2019) (emphasis added). The record contains substantial evidence that supports the ALJ's RFC determination. Accordingly, the Court finds that the RFC assessment is supported by substantial evidence of record.

VI.  **CONCLUSION**

For the reasons set forth herein, plaintiff's Motion to Reverse Decision of the Commissioner and/or to Remand to the

Commissioner **[Doc. #14]** is **DENIED,** to the extent it seeks remand for a new hearing, and defendant's Motion for Order Affirming the Decision of the Commissioner **[Doc. #18]** is **GRANTED.**

SO ORDERED at New Haven, Connecticut, this 7th day of February, 2022.

_____/s/_____

SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE